UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BILLIE JO SAENZ, | No. 2:15-CV-0219-JTR |
| Plaintiff, | |
| | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| CAROLYN W. COLVIN, Commissioner of Social Security, | |
| Defendant. | |

**BEFORE THE COURT** are cross-motions for summary judgment.  ECF No. 15, 23.  Attorney Dana C. Madsen represents Billie Jo Sanez (Plaintiff); Special Assistant United States Attorney Danielle R. Mroczek represents the Commissioner of Social Security (Defendant).  The parties have consented to proceed before a magistrate judge.  ECF No. 6.  After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

Plaintiff filed applications for a period of disability, Disability Insurance Benefits (DIB), and Supplemental Security Income (SSI) in August 2012, alleging disability since June 1, 1995, due to back pain, neck pain, migraines, anxiety,

ORDER GRANTING DEFENDANT'S MOTION . . . . - 1

depression, shoulder problems, numbness in left arm, and PTSD.  Tr. 302-317, 359.  Plaintiff later amended her onset date to November 1, 2009.  Tr. 59. Plaintiff's applications were denied initially and upon reconsideration.

Administrative Law Judge (ALJ) Moira Ausems held a hearing on November 5, 2013, Tr. 56-109, and issued an unfavorable decision on March 12, 2014, Tr. 22-36.  The Appeals Council denied review on June 30, 2015.  Tr. 1-7. The ALJ's March 2014 decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on August 28, 2015.  ECF No. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff was born on February 22, 1969, and was 40 years old on the alleged disability onset date, November 1, 2009.  Tr. 59, 304.  Plaintiff obtained her GED in 1996, Tr. 360, and later received vocational training in cosmetology, Tr. 67-68. Plaintiff has past work as a home health aide, kitchen helper, fast foods worker, sandwich maker, cashier, and dietary aide.  Tr. 66-67, 99, 347.  She indicated she stopped working on November 30, 2009, because of her condition.  Tr. 346.

At the administrative hearing, Plaintiff testified she has problems with migraines (at least six per month), back pain and numbness in her left arm.  Tr. 69-70, 84.  She stated she also has sciatic nerve problems that occasionally prevent her from walking as her legs will go numb.  Tr. 71, 78.  Plaintiff additionally indicated she had been attending counseling sessions through Catholic Charities for her PTSD, anxiety, depression and nightmares.  Tr. 85-86.

Plaintiff testified she has had Botox injections to treat her migraine headaches.  Tr. 76.  However, she stated she had an adverse reaction to the shots

that resulted in two trips to the emergency room on May 20, 2011.  Tr. 76.  She

described the reaction as feeling like a stroke:  her left side went numb, she could

not lift her neck or chin for a period of six to nine months, and she had resultant

memory and concentration issues.  Tr. 76-77.  She additionally had difficulty

speaking and swallowing.  Tr. 77.

Plaintiff testified she gets up early and walks her 15-year-old daughter to the

bus stop every morning before school.  Tr. 74.  While she has a driver's license,

she had not driven in over a year because of a lack of range of motion in her neck.

Tr. 75.

Plaintiff stated she had a severe alcohol problem for many years, was sober

for ten years, then relapsed in 2008 for a period of five years.  Tr. 86-90.  At the

time of the administrative hearing, she reported she had been sober for 16 months,

since July 4, 2012.

### STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in

medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035,

1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed *de novo*,

although deference is owed to a reasonable construction of the applicable statutes.

*McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ

may be reversed only if it is not supported by substantial evidence or if it is based

on legal error.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial

evidence is defined as being more than a mere scintilla, but less than a

preponderance.  *Id*. at 1098.  Put another way, substantial evidence is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the evidence is susceptible to

more than one rational interpretation, the court may not substitute its judgment for

that of the ALJ.  *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec.

Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).  Nevertheless, a decision supported by

substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see, Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since November 1, 2009, the alleged onset date. Tr. 24. At step two, the ALJ determined Plaintiff had the following severe impairments: migraine headache disorder; cervical strain and arthralgia; left shoulder impingement with capsulitis; anxiety disorder; pain disorder associated with both psychological factors and general medical condition; post-traumatic stress disorder; personality

ORDER GRANTING DEFENDANT'S MOTION . . . - 4

disorder with cluster B traits; and history of polysubstance abuse disorder in reported remission.  TR. 25.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  Tr. 26.  The ALJ assessed Plaintiff's RFC and determined she could perform a restricted range of light exertion level work.  Tr. 28.  The ALJ found Plaintiff is not able to climb ladders, ropes, or scaffolds; is precluded from left overhead reaching; can occasionally reach overhead on the right; can perform no more than lower semiskilled tasks; can have no more than brief superficial contact with the general public; and can have no cooperative teamwork endeavors with coworkers.  Tr. 28.

At step four, the ALJ found Plaintiff was unable to perform her past relevant work as a home health aide, kitchen helper, fast food worker, sandwich maker, cashier, or dietary aide.  Tr. 34.  However, at step five, the ALJ determined that, considering Plaintiff's age, education, work experience and RFC, and based on the testimony of the vocational expert, Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, including the jobs of laundry folder, small parts assembler and cafeteria attendant.  Tr. 34-35.  The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from November 1, 2009, the alleged onset date, through the date of the ALJ's decision, March 12, 2014.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.  Plaintiff contends the ALJ erred in this case by (1) failing to provide specific, clear and convincing reasons for discrediting Plaintiff's symptom allegations; and (2) failing to give weight to the medical opinions of Drs. Everhart, Pollack and Goodman.

ORDER GRANTING DEFENDANT'S MOTION . . . - 5

# DISCUSSION

## A.    Plaintiff's Credibility

Plaintiff first contends the ALJ erred by failing to provide valid reasons for finding Plaintiff not fully credible in this case.  ECF No. 15 at 14-20.

It is the province of the ALJ to make credibility determinations.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  However, the ALJ's findings must be supported by specific cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing."  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible.  Tr. 28.

The ALJ first determined the objective medical evidence of record did not fully support the level of limitation claimed by Plaintiff.  Tr. 28-29.  A lack of supporting objective medical evidence is a factor which may be considered in evaluating an individual's credibility, provided it is not the sole factor.  *Bunnell v. Sullivan*, 347 F.2d 341, 345 (9th Cir. 1991); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007) (in determining credibility, ALJ may consider "whether the alleged symptoms are consistent with the medical evidence").  The

ALJ additionally pointed out the effectiveness of medication in alleviating
Plaintiff's symptoms in this case.  Tr. 29.  An ALJ may rely on the effectiveness of
treatment to find a plaintiff's testimony unpersuasive.  *Morgan v. Comm'r of
Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (finding an ALJ may
properly rely on a report that a plaintiff's mental symptoms improved with the use
of medication); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (noting
impairments that are controlled by treatment cannot be considered disabling).

The ALJ noted Botox injections helped relieve Plaintiff's headache
symptoms and Plaintiff was feeling better in April 2010 after receiving the
injections.  Tr. 29, 400.  Plaintiff reported she was convinced the Botox injections
were helping more than ever as treatment for her migraines in December 2010, and
Plaintiff stated the injections continued to relieve her migraine headache symptoms
in February 2011.  Tr. 29, 396-397.  As stated by the ALJ, despite Plaintiff's
complaints about neurological symptoms on one occasion following the injections,
Tr. 76-77, the record did not reflect objective findings to explain the symptoms, Tr.
29, 406-408, and no medical source of record specifically concluded the alleged
symptoms were the result of the Botox injections, Tr. 407 ("head drooping
secondary to brushing her teeth could be secondary to the Botox but the other
symptoms do not seem consistent with Botox"), 612 ("It's unclear whether this is a
reaction to Botox or more from stress or anxiety or whether patient has some
underlying problem going on such as hypothyroidism or some other infectious
disorder.").

The ALJ also indicated Plaintiff reported pain medication was effective in
reducing her cervical spine and overall pain, and medication also helped relieve her
anxiety symptoms.  Tr. 29, 453-454.  Moreover, with regard to her complaints of
back pain, imaging of her cervical and lumbar spine was unremarkable, Tr. 689,
695, and an examination performed in April 2013 was negative for fracture or joint
swelling, Tr. 700.  Tr. 29.

ORDER GRANTING DEFENDANT'S MOTION . . . - 7

As determined by the ALJ, the evidence of record does not support the disabling symptoms and limitations alleged by Plaintiff in this case.  In addition, the record reflects the effectiveness of medication in alleviating Plaintiff's alleged pain and other symptoms.  It was proper for the ALJ to conclude Plaintiff's was not entirely credible because Plaintiff's alleged level of limitation was not consistent with the medical evidence and records reflect her symptoms improved with the use of medication.

The ALJ next indicated evidence of drug seeking behavior existed in the record.  Tr. 29.  An ALJ may consider evidence of a claimant's drug seeking behavior in assessing credibility.  *See Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001).  The ALJ noted Plaintiff's treating physician, Francis J. Goodman, M.D., indicated on October 12, 2010, that while Plaintiff seemed to be doing well with seven Percocet a day, there was a "low suspicion" of drug abuse.  Tr. 29, 463. The ALJ also noted Plaintiff requested an early refill of her narcotic medication in August 2010.  Tr. 29, 471 (Dr. Goodman reported Plaintiff "presents today because she had lost her hydrocodone.  The patient had gotten an early refill to go camping in Montana.  The patient states that it got mixed in with other garbage and was accidentally thrown out by her mother. . . .  She is requesting a refill of her hydrocodone.  Patient was reminded of our refill policy of no refills for lost or stolen medication.").  As indicated by the ALJ, Plaintiff had also admitted to prior legal problems "because of drugs and theft."  Tr. 29, 763.  It was proper for the ALJ to find the suggestion of drug seeking behavior in the record weakened Plaintiff's overall credibility.

The ALJ further noted the record reveals Plaintiff had worked/attended school with the allegedly disabling impairments.  Tr. 29.  Attending school is an activity which is inconsistent with an alleged inability to perform work.  *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993).  In September 2010, Plaintiff was attending cosmetology school, working nine hours per day, often standing up

ORDER GRANTING DEFENDANT'S MOTION . . . - 8

cutting hair and doing other tasks.  Tr. 29, 468.  As of October 2010, Plaintiff was attending cosmetology school six days a week, full-time, and planned to continue to do so for the following six to nine months.  Tr. 29, 463.  The fact that the record reflects Plaintiff was able to attend school full-time, as documented by the ALJ, is a valid reason for the ALJ to discount Plaintiff's assertion of disabling symptoms.

The ALJ next noted Plaintiff reported she last worked at Gonzaga and left because she felt "harassed," and concluded that the fact Plaintiff quit working for reasons unrelated to her impairments detracted from her credibility, Tr. 29, 66-67. The inability to work due to nondisability factors is a valid basis for rejecting a claimant's credibility.  *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (stating that in making a credibility determination, the ALJ did not err by considering that claimant left his job because he was laid off, rather than because he was injured).  The ALJ properly discounted Plaintiff's credibility on the basis that she stopped working for reasons unrelated to her alleged disabling impairments.

The ALJ also indicated secondary gain issues may be present in this case. Tr. 30.  The Ninth Circuit has recognized that the ALJ may consider the issue of secondary gain in rejecting symptom testimony.  *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998); *Gaddis v. Chater*, 76 F.3d 893, 896 (8th Cir. 1996) (allowing an ALJ to judge credibility based on a strong element of secondary gain); *Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992) (the ALJ may properly consider the issue of motivation in assessing credibility).  The ALJ noted Plaintiff expressed concern over finances in August 2011, Tr. 30, 604, and during her psychological evaluation with Jonathan W. Anderson, Ph.D., on September 6, 2011, Tr. 30, 569. On September 11, 2011, Dr. Goodman indicated Plaintiff was applying for permanent disability and reported she "needs a note saying that she currently is disabled and cannot continue to work."  Tr. 30, 602.  The ALJ found these examples suggest Plaintiff could be attempting to portray more extensive

limitations than are actually present in order to increase the chance of obtaining benefits. Tr. 30. This is another permissible basis for the ALJ to find Plaintiff less than fully credible in this case.

The ALJ lastly found Plaintiff's daily activities were inconsistent with her assertion of disability. Tr. 30. It is well-established that the nature of daily activities may be considered when evaluating credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The ALJ indicated records show Plaintiff identified cooking as her hobby and that she filled her day "cleaning house and cooking," Tr. 569; she was able to go camping in Montana in August 2010, Tr. 471; she walked daily and used the bus for transportation, Tr. 762; she could walk six blocks before needing to stop, Tr. 762; and she attended alcoholics anonymous meetings and medical appointments during the week, Tr. 763. Tr. 30. As noted by the Commissioner, such activities contradict Plaintiff's allegations that she could stand for less than ten to fifteen minutes, was unable to lift her left arm above shoulder height, and lacked energy to work. ECF No. 23 at 11; Tr. 70, 380, 685, 689. It was proper for the ALJ to consider this level of activity as inconsistent with Plaintiff's claim of totally disabling limitations. *See Molina v. Astrue*, 674 F.3d 1104, 1112-1113 (9th Cir. 2012).

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon *de novo* review. 42 U.S.C. § 405(g). After reviewing the record, the Court finds that the ALJ provided ample clear and convincing reasons for discounting Plaintiff's subjective complaints, which are
///

ORDER GRANTING DEFENDANT'S MOTION . . . - 10

1  fully supported by the record.  Accordingly, the ALJ did not err by finding
2  Plaintiff's allegations were not entirely credible in this case.

3  **B.    Medical Source Opinions**

4      Plaintiff next contends that the ALJ erred by failing to accord proper weight
5  to the opinions of certain medical sources regarding her physical and psychological
6  limitations.  Plaintiff specifically argues the ALJ erred by discounting the opinions
7  of Joyce Everhart, Ph.D, Dennis Pollack, Ph.D, and Francis Goodman, M.D.  ECF
8  No. 15 at 20-23.

9      In disability proceedings, a treating physician's opinion carries more weight
10 than an examining physician's opinion, and an examining physician's opinion is
11 given more weight than that of a non-examining physician.  *Benecke v. Barnhart*,
12 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.
13 1995).  If the treating or examining physician's opinions are not contradicted, they
14 can be rejected only with clear and convincing reasons.  *Lester*, 81 F.3d at 830.  If
15 contradicted, the opinion can only be rejected for "specific" and "legitimate"
16 reasons that are supported by substantial evidence in the record.  *Andrews v.*
17 *Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).  Historically, the courts have
18 recognized conflicting medical evidence, the absence of regular medical treatment
19 during the alleged period of disability, and the lack of medical support for doctors'
20 reports based substantially on a claimant's subjective complaints of pain as
21 specific, legitimate reasons for disregarding a treating or examining physician's
22 opinion.  *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-
23 1464 (9th Cir. 1995); *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

24     Here, the ALJ found that although Plaintiff has severe impairments, the
25 objective medical evidence did not support the degree of limitation alleged by
26 Plaintiff.  The ALJ determined Plaintiff retained the RFC to a restricted range of
27 light exertion level work.  Tr. 28.  The ALJ found Plaintiff is not able to climb
28 ladders, ropes, or scaffolds; is precluded from left overhead reaching; can

ORDER GRANTING DEFENDANT'S MOTION . . . - 11

occasionally reach overhead on the right; can perform no more than lower semiskilled tasks; can have no more than brief superficial contact with the general public; and can have no cooperative teamwork endeavors with coworkers. Tr. 28. The Court finds the ALJ's interpretation of the medical record is supported by substantial evidence. *See infra*.

### 1.    Joyce Everhart, Ph.D.

Plaintiff contends the ALJ erred by failing to accord proper weight to the October 11, 2012, psychological assessment of Dr. Everhart. ECF No. 15 at 21. Plaintiff, however, does not specifically assert which particular opinions of Dr. Everhart the ALJ erroneously rejected. *See Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) ("We review only issues which are argued specifically and distinctly in a party's opening brief." (Citations omitted)); *Carmickle*, 533 F.3d at 1161 n.2 ("issues not argued with specificity in briefing will not be addressed"). Nevertheless, the Court has reviewed the ALJ's rationale for failing to fully credit Dr. Everhart and shall herein discuss the ALJ's determination in this regard.

Dr. Everhart completed a psychological assessment on October 11, 2012. Tr. 681-687. Dr. Everhart diagnosed Plaintiff with pain disorder associated with both psychological factors and a general medical condition; history of post-traumatic stress disorder; alcohol dependence in early full remission, per self-report; cocaine dependence in sustained full remission, per self-report; and cognitive disorder, NOS. Tr. 685-686. She assessed a current Global Assessment of Functioning (GAF) score of 50.[1] Tr. 686. Dr. Everhart opined that Plaintiff did

---

[1]Although Dr. Everhart assigned a GAF score of 50, an ALJ has no obligation to credit or even consider GAF scores in a disability determination. *See* 65 Fed. Reg. 50746, 50764-50765 (Aug. 21, 2000) ("The GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorders listings."). In fact, the GAF scale is no longer included in the DSM–V: "It was

ORDER GRANTING DEFENDANT'S MOTION . . . - 12

not need help to complete her activities of daily living; her attention, concentration, and intellectual ability appeared to be within normal limits; testing suggested she would have difficulty with executive functioning; she had the ability to listen, understand, remember and follow simple directions but would likely have difficulty with complex multistep tasks; she would likely do best if she does not have to interact with the public and does not have to interact closely with supervisors and coworkers; her persistence and pace were good; and she remains on task and does not appear easily distracted.  Tr. 686.

The Court notes at the outset that the limitations assessed by Dr. Everhart do not appear to conflict with the ALJ's ultimate RFC determination which restricts Plaintiff to performing no more than lower semiskilled tasks with no more than brief superficial contact with the general public and no cooperative teamwork endeavors with coworkers.  Tr. 28.  However, the ALJ did assign "little weight" to the opinion because it was a one-time evaluation, was unsupported by the weight of the record evidence and contradicted by Plaintiff's significant activities of daily living that she reported to Dr. Everhart.  Tr. 31.

With regard to the weight of the evidence of record, the ALJ noted Dr. Anderson, completed a psychological evaluation on September 6, 2011, which was accorded "substantial weight."  Tr. 30; 565-572.  Dr. Anderson opined that Plaintiff had the ability to follow both two and three step commands with little difficulty, she did not have problems following conversation, her insight was good, and, although Plaintiff alleged pain, she may have overrepresented her pain level as she did not demonstrate pain behaviors during the assessment.  Tr. 30, 570-572.

---

recommended that the GAF be dropped from the DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice."  *Diagnostic and Statistical Manual of Mental Disorders–V*, 16 (5th ed. 2013).

Dr. Anderson found that Plaintiff did not show difficulty sustaining attention and persisted in tasks with adequate pace. Tr. 30, 572. Dr. Anderson concluded Plaintiff could sustain work-related activities but would benefit from a position that did not require significant adaptation to change or was fast-paced. Tr. 30, 572.

Larry Kravitz, Ph.D., a medical expert, was accorded substantial weight by the ALJ. Tr. 32-33, 791-799. On November 19, 2013, Dr. Kravitz reviewed the entire record and answered interrogatory questions presented by the ALJ. *Id*. Dr. Kravitz identified Plaintiff's impairments as substance abuse, somatization, cognitive disorder, personality disorder, posttraumatic stress disorder, major depressive disorder and pain disorder. Tr. 32, 792. Dr. Kravitz noted personality testing suggested possible exaggeration of symptoms and indicated Dr. Pollack's assessment of marked limitations could be attributed to Plaintiff's physical and pain complaints. Tr. 33, 799. He opined Plaintiff would be able to understand, remember and carry out simple and some detailed instructions and persist on at least simple, routine work tasks mentally to completion; she appeared able to interact appropriately with others in brief and uncomplicated communications; and she would function best in a work environment with only occasional contact with others and no more than routine day-to-day work stressors. Tr. 33, 799.

In October 2012, state agency reviewing psychologist, James Bailey, Ph.D., opined that the evidence of record, including the examinations and Plaintiff's activities of daily living, supported Plaintiff's ability to understand, remember and carry out simple work tasks and instructions. Tr. 33, 148. Dr. Bailey indicated the evidence showed Plaintiff was able to maintain persistence and pace for a 40-hour workweek, completing simple work tasks and procedures with superficial co-worker coordination. Tr. 33, 149. He opined Plaintiff would work best with limited general public interactions and superficial social interactions with co-workers and supervisors and in a predictable environment with minor changes and variations. Tr. 33, 149. On February 15, 2013, state agency reviewing

1  psychologist Richard Borton, Ph.D., agreed with Dr. Bailey's assessment that
2  Plaintiff could complete simple work tasks and instructions during a 40-hour
3  workweek.  Tr. 34, 176-178.   The ALJ gave the state agency assessments
4  significant weight.  Tr. 34.

5      As determined by the ALJ, the longitudinal medical evidence does not
6  support Dr. Everhart's assessed limitations.  Specifically, Dr. Everhart's indication
7  that Plaintiff "is likely to do best" with no public contact and no close interactions
8  with supervisors and coworkers, Tr. 686, is inconsistent with the weight of the
9  record evidence, which demonstrates Plaintiff is capable of performing work with
10 limited general public interactions and superficial social interactions with co-
11 workers and supervisors, Tr. 149, 177, 572, 799.

12     With respect to the activities of daily living reported to Dr. Everhart, it was
13 reported that Plaintiff was involved in the organized activity of going to church
14 every Saturday and going to AA meetings at least once a week.  Tr. 685.  Dr.
15 Everhart noted that, on a typical day, Plaintiff wakes up at 6:30 a.m., meditates and
16 prays, takes her medications and drinks coffee, then plans her day.  Tr. 685.
17 Plaintiff does her chores of cleaning the kitchen, which included four extra deep
18 cleaning chores such as scrubbing the walls and cupboards, and doing her laundry.
19 Tr. 685.  Plaintiff reported to Dr. Everhart that she loved to cook, but did not cook
20 very much at the shelter she was currently staying at with her daughter.  Tr. 685.
21 At the end of the day, Plaintiff liked to relax, listen to music, read and watch
22 television before going to bed at 10:00 p.m.  Tr. 685.  As determined by the ALJ,
23 these reported activities, and most significantly Plaintiff's ability to attend church
24 and AA meetings weekly, conflicted with Dr. Everhart's indication that Plaintiff
25 "is likely to do best" with no public contact and no close interactions with
26 supervisors and coworkers.  Tr. 686.

27     The ALJ accorded Dr. Everhart's opinion "little weight" because it was
28 inconsistent with the weight of the record evidence and was contradicted by the

ORDER GRANTING DEFENDANT'S MOTION . . . - 15

significant activities of daily living reported to Dr. Everhart and other medical providers. Tr. 31. These are clear and convincing reasons that are supported by substantial record evidence. *Lester*, 81 F.3d at 830. The ALJ did not err with respect to her findings regarding Dr. Everhart's opinion.

### 2.    Dennis R. Pollack, Ph.D.

Plaintiff next asserts the ALJ erred by failing to accord proper weight to the September 23, 2013, psychological evaluation of Dennis R. Pollack, Ph.D. ECF No. 15 at 22. However, other than to complain about the ALJ's failure to credit Dr. Pollack's GAF scoring,[2] Plaintiff again fails to specifically assert which particular opinions of Dr. Pollack the ALJ erroneously rejected. *See Greenwood*, 28 F.3d at 977 ("We review only issues which are argued specifically and distinctly in a party's opening brief." (Citations omitted)); *Carmickle*, 533 F.3d at 1161 n.2 ("issues not argued with specificity in briefing will not be addressed"). The Court has nevertheless reviewed the ALJ's reasons for failing to fully credit the opinions of Dr. Pollack and finds those reasons fully supported. *See infra*.

On September 23, 2013, Dr. Pollack completed a psychological evaluation of Plaintiff. Tr. 760-770. Dr. Pollack found personality test results revealed Plaintiff was likely to present a wide range of psychological problems and neuropsychological testing suggested a neuropsychological deficit. Tr. 765. Dr. Pollack also filled out a Mental Medical Source Statement form opining Plaintiff had marked limitations in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances and in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 767-769. Dr. Pollack does

---

[2]As indicated above, an ALJ has no obligation to credit or even consider GAF scores in a disability determination. *See supra*.

ORDER GRANTING DEFENDANT'S MOTION . . . - 16

not provide an explanation for these check box opinions other than writing "see report" on the form. Tr. 769; *see Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (stating that the ALJ's rejection of a check-off report that did not contain an explanation of the bases for the conclusions made was permissible).

The ALJ did not accord significant weight to Dr. Pollack's opinion because the one-time evaluation was not supported by the longitudinal record and was inconsistent with Plaintiff's daily living activities. Tr. 32. This determination by the ALJ is fully supported.

No other medical professional of record has opined that Plaintiff has marked limitations in her concentration and persistence. As discussed above, to the contrary, Dr. Anderson opined that Plaintiff had the ability to follow both two and three step commands with little difficulty, she did not have problems following conversation, her insight was good, and she had no difficulty sustaining attention and persisting in tasks with adequate pace. Tr. 570-572. Dr. Kravitz determined Plaintiff would be able to understand, remember and carry out simple and some detailed instructions and persist on at least simple, routine work tasks mentally to completion. Tr. 799. The state agency reviewers also found that Plaintiff was capable of maintaining persistence and pace for a 40-hour workweek, completing simple work tasks and procedures. Tr. 148-149, 176-178. Dr. Everhart also opined that Plaintiff's attention, concentration, and intellectual ability were within normal limits and that she had the ability to listen, understand, remember and follow simple directions. Tr. 686. Dr. Everhart found that Plaintiff's persistence and pace were good and that she remained on task and did not appear easily distracted. Tr. 686.

As determined by the ALJ, Dr. Pollack's opinion is not supported by the evidence of record. Tr. 32. Moreover, as indicated by the ALJ, the marked limitations noted in the check-box report are inconsistent with Plaintiff's daily activities, as more fully discussed above. *See supra*. The ALJ provided clear and

ORDER GRANTING DEFENDANT'S MOTION . . . - 17

convincing reasons for according little weight to the September 23, 2013, report of Dr. Pollack.

### 3.    Francis Goodman, M.D.

Plaintiff lastly contends that ALJ erred by affording "no weight" to Dr. Goodman's "Medical Clearance" statements.  ECF No. 15 at 22-23; Tr. 800-803.

Dr. Goodman's July 13, 2011 "Medical Clearance" statement indicates Plaintiff was disabled for work for May, June and July; his September 7, 2011 "Medical Clearance" statement states Plaintiff was disabled for work for six months; his January 25, 2012 "Medical Clearance" statement indicates Plaintiff was disabled for work for another six months; and his July 25, 2012 "Medical Clearance" statement opines Plaintiff was disabled for work for another eight months.  Tr. 800-803.  None of these disability statements by Dr. Goodman individually meet the durational requirement of the Social Security Act.  *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (an individual shall be considered disabled if she has an impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months).  Moreover, whether a claimant is "disabled" under the medical and vocational standards of the Social Security Act is a legal determination reserved for the ALJ.  *See Edlund*, 253 F.3d at 1156-1157; *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000).  In any event, as found by the ALJ, these medical clearance statements fail to identify any specific physical or mental functional limitations to support the disability opinion, *see Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (noting the rejection of a treating physician's report was proper when that physician failed to assign any specific limitations on the claimant), and acknowledge that "we are awaiting a determination if patient is employable or permanently disabled."  Tr. 32, 800-803.  The ALJ provided clear and convincing reasons for according "no weight" to the medical clearance statements of Dr. Goodman.

ORDER GRANTING DEFENDANT'S MOTION . . . - 18

As stated above, it is the responsibility of the ALJ to determine credibility, resolve conflicts in medical testimony and resolve ambiguities, *Saelee*, 94 F.3d at 522, and this Court may not substitute its own judgment for that of the ALJ, 42 U.S.C. § 405(g).  Where, as here, the ALJ has made specific findings justifying a decision, and those findings are supported by substantial evidence in the record, this Court's role is not to second-guess that decision.  *Fair*, 885 F.2d at 604.  Based on the foregoing, the Court finds the ALJ did not err by according little weight to the opinions of Drs. Everhart and Pollack and no weight to Dr. Goodman's "Medical Clearance" statements.  The ALJ's RFC determination is supported by substantial evidence.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly, **IT IS ORDERED:**

1.    Defendant's Motion for Summary Judgment, **ECF No. 23**, is **GRANTED**.

2.    Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  **Judgment shall be entered for Defendant** and the file shall be **CLOSED**.

DATED August 22, 2016.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION . . . - 19